# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JEANINE L. JACKSON,<br><br>                           Plaintiff,<br><br>v.<br><br>CT CORPORATION SYSTEM, SIMON PROPERTY GROUP INC., SOUTHRIDGE LIMITED PARTNERSHIP, JEREMY BERMKE, JAMEY STREMPLER, MARY MOKWA, SOUTHRIDGE MALL INC., and JOHN DOE,<br><br>                          Defendants. | Case No. 19-CV-1495-JPS<br><br><br>**ORDER** |

On October 11, 2019, the plaintiff, Jeanine L. Jackson ("Jackson"), filed a *pro se* complaint and a petition to proceed *in forma pauperis*. (Docket #1 and #2). Notwithstanding the payment of any filing fee, the Court must dismiss a complaint filed *in forma pauperis* if it raises claims that are "frivolous or malicious," if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Jackson alleges that she is African American and lives in Milwaukee. (Docket #1 at 2). Until earlier this year, she owned a retail business called Ludajs located in Southridge Mall in Glendale, Wisconsin. *Id.* According to Jackson, Southridge Mall is owned and operated by the Simon Property Group ("Simon Property"), located in Indianapolis, Indiana. *Id.* at 3. Defendants Jeremy Bermke ("Bermke"), Jamey Strempler ("Strempler"),

and Mary Mokwa ("Mokwa") are employees of Simon Property. *Id.* They work, and presumably live, in Wisconsin. *Id.*

Jackson first entered into a lease agreement with Simon Property for her retail space (a push-cart in the center of the mall) in March 2019. *Id.* at 4. She paid rent weekly. *Id.* In May 2019, she deposited a check for the week of May 13 in the mall management drop box, but it was not cashed promptly. *Id.* at 5. Jackson faults Strempler for this oversight. *Id.* Because the delay was causing issues for Jackson in regard to her business bank account, she took matters into her own hands; on May 20, she withdrew funds from her account and paid Strempler personally with a money order. *Id.* On May 24, another mall official, Mike Asmondy ("Asmondy"), told Jackson that her rent check for the week of May 13 had bounced. *Id.* Jackson told him about the delay in her check being cashed and that she paid instead by money order. *Id.* It is unclear whether Asmondy and Strempler actually accepted the money order, but in any event, they insisted that because the payment was late, Jackson would have to pay a $100 "return check fee." *Id.* Jackson was permitted to renew her lease on the promise that she would pay the amount then overdue, which was $400. *Id.* at 6.

By July 2019, Jackson still had not paid back all of the overdue amount. *Id.* at 7. Strempler told her that if she did not pay the remaining $250, her lease would not be renewed. *Id.* Jackson refused to pay because, according to Jackson, it was "[Strempler's] negligence that caused this entire situation[.]" *Id.* At this point, Mokwa pulled Jackson aside, and Jackson explained her side of the story to Mokwa. *Id.* at 7–8. Mokwa agreed to waive the $100 fee previously imposed, but insisted that from then on, Jackson would have to pay rent up front, *i.e.*, without a grace period. *Id.* at

8. Jackson takes umbrage with this because other tenants in the mall are given five-day grace periods to pay rent. *Id.*

In August 2019, Jackson entered a new lease arrangement whereby her weekly rent was due on Wednesdays. *Id.* at 9. On Wednesday, August 21, she deposited in the drop box a rent check that was $80 short. *Id.* On August 23, Bermke approached Jackson at her push cart in the middle of the mall and berated her for submitting a rent check for less than the full amount due without speaking to him first. *Id.* at 10. He insisted that she pay the remaining $80 that day, and she refused, saying she would pay on Monday. *Id.* Bermke threatened not to renew her lease. *Id.* Because all of this took place in public, in front of customers, Jackson says she felt humiliated and belittled. *Id.* Jackson also claims that Bermke would not have yelled at her in that way if she were a man. *Id.* She was so rattled by the interaction that she could not operate her business on August 26 and 27. *Id.* at 11. Jackson informed Mokwa, Strempler, and Bermke that, going forward, she would only communicate with them in writing. *Id.*

On August 28, Mokwa sent Jackson a "notice to cure" letter, stating that if Jackson did not pay the $80 balance within ten days she would be evicted. *Id.* at 12. Jackson believes she was not actually in default at that time, because she had a five-day grace period that extended her payment deadline to September 1. *Id.* Jackson paid the $80 balance on September 9. *Id.*

On September 12, the defendants' legal counsel provided Jackson with a notice that her lease would be terminated if her weekly rent was not paid by September 17. *Id.* Jackson claims not to have been in default at this time, either, because the five-day grace period meant her rent was due September 15. *Id.* at 12–13. Jackson apparently did not pay, because on

October 9, she removed her belongings from Southridge Mall and ceased doing business there. *Id.* at 13. Although her allegation on this point is vague, it appears that Southridge Mall had initiated eviction proceedings against Jackson, but she moved out of the building before a court ever ordered her to leave. *Id.*

On these allegations, Jackson seeks to bring claims that she describes as economic interference, tortious interference, negligence, negligent and intentional infliction of emotional distress, right to privacy, negligent supervision, and discrimination. *Id.* at 2.

Even if Jackson's allegations were sufficient to state a claim under any of her theories of relief, which is doubtful, this case could not proceed here; it does not invoke the subject matter jurisdiction of the federal courts. Federal courts are courts of limited jurisdiction, and may only hear cases in two primary categories: 1) those raising issues of federal law, known as "federal question" jurisdiction, and 2) those between parties who are citizens of different states and which involve an amount in controversy exceeding $75,000.00, known as "diversity" jurisdiction. *See* 28 U.S.C. §§ 1331 and 1332(a). Jackson's allegations do not invoke either form of jurisdiction. She does not allege violation of any federal law, meaning federal question jurisdiction is not available. The parties are not completely diverse (most of them being citizens of Wisconsin) and Jackson does not allege injuries exceeding the amount in controversy threshold, so diversity jurisdiction is not available either.

Therefore, Jackson's complaint must be dismissed without prejudice for lack of subject matter jurisdiction. Her motion to proceed *in forma pauperis* will be denied as moot.

Accordingly,

**IT IS ORDERED** that this action be and the same is hereby **DISMISSED without prejudice** for lack of subject matter jurisdiction; and

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and the same is hereby **DENIED as moot.**

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 11th day of December, 2019.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge